UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IN RE:                                                                                    Case No. 8-20-70676-ast
                                                                                                Chapter 7
    CHRISTOPHER JOHN HANOVER
                                                                                    **ATTORNEY AFFIRMATION**
                            Debtor(s)
-------------------------------------------------------------------X

        I, ELIO FORCINA, an attorney admitted to practice law in the courts of the State of New York, states and affirms:

1. Please be advised that I am now representing the Debtor, Christopher John Hanover, in this civil matter.

2. We wish to have this case dismissed on the basis of circumstances beyond the control of the Debtor. He is able to pay off his debts and has made individual arrangements with creditors. This is in part due to unforeseen settlement money he was owed from a prior judgement.

3. Additionally, please refer to the attached Affidavit of the Debtor for Details regarding the circumstances of this request and years of relevant information.

Dated: April 14, 2020

                                                                           Elio Forcina Esq.
                                                                           *Attorney for Debtor*
                                                                           66-85 73 Place, 2FL
                                                                           Middle Village NY 11379

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

CHRISTOPHER JOHN HANOVER                                    Chapter 7
                                                            Case No.: 20-70676

Debtor(s)

                                                                **AFFIDAVIT**

-------------------------------------------------------------------X

I, CHRISTOPHER JOHN HANOVER, debtor of this matter, being duly sworn, deposes and states the following:

1. I write this affidavit in support of dismissing the Chapter 7 Bankruptcy I filed pro se on January 31, 2020. I enter this affidavit as "Good Cause" to voluntarily dismiss this application due to circumstances out of my control.

2. Prior to filing this application, I was involved in lawsuits against my former brother-in-law, Frank Palazzolo, and his son Brian Palazzolo. These lawsuits have gone on since 2012 with little or no results until December of 2019.

3. Prior to these lawsuits, I owned four (4) multifamily investment properties in the Bronx, in which I received rental income. I sold these properties in January 2008. My source of income from those properties involved monthly interest payments with a balloon payment due in two (2) years. (January 2010).

4. In the same month, my wife, Laura Hanover passed away from Wagner's disease. I was left devastated and had the added responsibility of raising my two young sons by myself.

5. In January 2010 the purchasers of the properties in the Bronx defaulted. It was then, my brother in law, Frank Palazzolo got involved. We made the same agreement that he would take over interest payments for the next two (2) years and pay a lump-sum of $2,000,000.00 at the end of those two years. (January 2012).

6. In January of 2012, my brother-in-law stopped and refused to continue paying me and gave me no choice but to file a lawsuit against him and his so. In 2015 a judgement was granted for $400,000.00 which was never satisfied, leaving me to file once against another lawsuit in 2017.

7. The final trial date was December 3, 2019 and a settlement was reached for $500,000.00. Funds were deposited into my attorney's escrow account and could not be released to until all judgements against Mr. Palazzolo were lifted.

8. In addition, on December 19, 2019 I had major spinal surgery from a job accident at American Airlines. I started working at American from 2011 to support my children and continued until a job injury in May 2018 and finally in August 2019 prevented me from working further. Attached is a hospital statement after having a surgery that left me bed ridden and limited me to daily activities and the inability to work. (**Exhibit "A"**)

9. I received a Notice of Sale on January 4, 2020 for my property located at 615 Wyngate Drive West, Valley Stream, New York 11580.

10. After years of lawsuits, raising my sons on my own, a major job injury, and the need to protect my property, I thought I had no other alternative but to file this application. My absolute delight came on February 3, 2020, when I found out the funds from the settlement were available and I can now bring my mortgage current before the foreclosure scheduled for Tuesday, February 4, 2020.

11. It has always been my sincere wish to rectify the situation with my mortgage company. Additionally, I have spoken with each of my creditors, and have made individual arrangements to pay back all money owed. Since I now have the money available, there is no need to file this application and endure additional expenses.

12. With the courts permission, I wish to allow to make a fresh start, bringing my mortgage current as a result of this lawsuit and job injury.

13. I am a retied U.S marine with two (2) honorable discharges, looking for a new beginning with my sons, and creating a more stable environment in which I am now able to handle my own financial responsibilities.

_____
Christopher John Hanover

Sworn to before me this

7 day of APRIL, 2020

_____
Notary Public

Elio Forcina
NOTARY PUBLIC, STATE OF NEW YORK
No 02FO6357181
Qualified in Queens County
My Commission Expires April 17, 2021

# EXHIBIT A

# Hanover, Christopher J

MRN: 1▮▮

**Chandranath Sen, MD**
Physician
Neurosurgery

Op Notes
Signed

Creation Time: 12/19/2019  4:07 PM

Procedure: DECOMPRESSION EXTRA CRANIAL VERTEBRAL ARTERY
Case Time: 12/19/2019 8:44 AM
Surgeon: **Chandranath Sen, MD**

PATIENT NAME: HANOVER, CHRISTOPHER J.
DOB: ▮▮▮

NYU LANGONE HEALTH SYSTEMS

MRN: 13▮▮
CSN: 77▮▮
DATE OF OPERATION: 12/19/2019

OPERATIVE REPORT

PREOPERATIVE DIAGNOSIS: Occlusive cerebrovascular disease, now presenting with vertebrobasilar insufficiency related to turning the neck to the right due to kinking of the artery at C1-C2.

POSTOPERATIVE DIAGNOSIS: Occlusive cerebrovascular disease, now presenting with vertebrobasilar insufficiency related to turning the neck to the right due to kinking of the artery at C1-C2.

OPERATIONS:
1. Left-sided C1 hemilaminectomy and decompression of the vertebral artery. 2. Use of surgical microscope.

SURGEON: Chandranath Sen, M.D.

ASSISTANT(S): Dr. Jugal Shah.

TYPE OF ANESTHESIA: General with endotracheal tube.

FINDINGS: External impingement at C1-C2

HISTORY: This 59-year-old man had suffered with this problem, which was precipitated on turning his head to the right and looking upwards. This would produce near syncope situation. Workup had revealed that he had occlusion of the left internal carotid artery and the right vertebral artery and was reconstituting his basilar artery through small collaterals. The left vertebral artery was the main source of supply to the posterior fossa and the basilar artery. A dynamic angiogram showed that when he turned his head to the right and looked upwards, there was impediment of flow through the left vertebral artery at the level of C2 and C1, leading to posterior fossa ischemic symptoms. He was brought in at this time for decompression of the artery and released from the C1.

PROCEDURE: After induction and endotracheal intubation and placement of appropriate lines and monitoring electrodes were placed, the patient was given the preoperative dose of antibiotics and steroids. The patient was then positioned in a right lateral decubitus with axillary roll and adequate padding at all the pressure points. The patient was secured to the operating table. The left side of the head and neck was then shaved and prepped and draped in a sterile manner. An inverted L-shaped incision was made on the lateral aspect of the neck and then in the suboccipital region in a horizontal manner. The skin flap was elevated and then the cervical muscles were dissected in a layer-by-layer fashion. The suboccipital triangle was exposed with the superior and inferior oblique muscles identified.

The operating microscope was now brought in. Under magnification of the microscope, the superior oblique muscle on the left was taken down and detached from the suboccipital region and also the transverse process of C1. By direct stimulation, I was able to identify the accessory nerve as it was going around the transverse process of C1 onto the sternocleidomastoid muscle. This was carefully protected. The subperiosteal dissection was used from the C1 transverse process and lamina, detaching the inferior oblique and the superior oblique attachments. The fat tissue in the suboccipital triangle was identified and carefully the vertebral artery was exposed above the C1 lamina on the left side. I then carried the dissection further inferiorly, identifying the vertebral artery below the C1 transverse process down to the C2 nerve root. There were large veins, which were carefully dissected. I coagulated the vein and incised this to expose the arterial wall itself. Carefully, the venous bleeding was controlled with bipolar cautery as well as FloSeal. Using a high speed drill with a diamond bur, I drilled down the left-sided lamina of C1 and the left transverse foramen was unroofed. I now carried the dissection into the periosteal and venous sheath around the artery at the C1 transverse foramen. A vessel loop was passed around the artery and I carefully started to dissect the vessel away from the venous plexus in the C1 transverse foramen. I freed it up all the way down to the C2 nerve root where it was crossing the artery. The artery was completely freed up and mobilized from the level of the C2 nerve root until the point where it turned around the occipital condyle to enter the bottom of the foramen magnum. The artery was well decompressed and mobilized. Careful hemostasis was achieved. Lots of irrigation was used at this point. Thus, it appeared that the appropriate amount of mobilization had been performed. I irrigated everything out and then reapproximated the muscle layers with Vicryl sutures. A 3-0 Vicryl Rapide was used for the skin. The monitoring remained stable throughout the operation. The patient was then turned supine onto the bed and awakened and extubated and transferred to the recovery room in a stable and satisfactory condition.

WOUND CLASSIFICATION: Clean

SPECIMENS: None

COMPLICATIONS: none

Chandranath Sen, MD

TID: ███
DD: 12/19/2019 14:52:20  DT: 12/19/2019 16:06:37

Last signed by: Chandranath Sen, MD at 12/24/2019 3:43 PM
Electronically signed by Chandranath Sen, MD at 12/24/2019 3:43 PM

Admission
(Discharged) on
12/18/2019