UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                                              Case No. 8-20-70676-ast

CHRISTOPHER JOHN HANOVER,                                      Chapter 7

Debtor.
-------------------------------------------------------------X

## ORDER APPROVING IN PART THE APPLICATIONS FOR COMPENSATION OF ROBERT L. PRYOR, CHAPTER 7 TRUSTEE AND PRYOR & MANDELUP, L.L.P.

Pending before the court are the Application for Compensation filed by Robert L. Pryor, the chapter 7 case trustee, and the Application for Compensation filed by Pryor & Mandelup, L.L.P. (each, an "Application"; together, the "Applications"). For the reasons set forth, each Application is approved in part, on the terms herein.

### I.  FACTS

On January 31, 2020, Christopher John Hanover ("Debtor"), acting pro se, filed a petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"[1]) [dkt item 1], to stop a foreclosure of his home scheduled for February 4, 2020. The petition was bare-bones; Debtor did not file supporting documents, such as a schedule of assets and liabilities or a statement of financial affairs. This was Debtor's third bankruptcy case, with the prior two cases having ended in dismissal without discharge.[2]

Robert L. Pryor was appointed as the case trustee (the "Trustee"). He soon received information that Debtor was in possession of substantial, non-exempt funds. Given this, and

---

[1] Hereinafter, any reference to "section" or "§" shall refer to a section of the Bankruptcy Code, unless otherwise indicated.

[2] Debtor's prior cases include: Case Number 14-71495-ast (dismissed on May 28, 2014) and Case Number 19-70826-ast (dismissed less than a year ago, on June 19, 2019).

1

given Debtor's filing history, on February 7, 2020, the Trustee filed an Application Extending the Time for Debtor to Comply with Bankruptcy Code Section 521(a) and to Allows Debtor's Case to Remain Open to Administer Assets and Compelling Debtor to Complete All Required Schedules, Statements and Other Disclosures (the "Application to Extend Time and Compel") [dkt item 11].

On February 18, 2020, Debtor filed a Letter [dkt item 12], objecting to the Application to Extend Time and Compel. In the Letter, Debtor stated that on February 3, 2020, he learned that funds from a prepetition lawsuit "were available," and that those funds would allow him to bring his mortgage current. Contemporaneously, Debtor filed a Motion to Dismiss Case [dkt item 13].

On February 19, 2020, the Trustee filed an Application to Employ Pryor & Mandelup, L.L.P. as General Counsel ("Counsel") [dkt item 14]. On March 4, 2020, the Court entered an Order approving the employment application [dkt item 15], with final compensation, as usual, being subject to Court approval.

On February 26, 2020, the Application to Extend Time and Compel came on for hearing. One of the Trustee's attorneys, a partner at Counsel's firm, appeared; Debtor appeared pro se. At the hearing, Debtor represented that he was waiting for the distribution of the funds he had learned were available, and asked that the case be dismissed because he no longer needed bankruptcy relief. The Trustee voiced his concerns regarding Debtor's failures to make financial disclosures and his purposes in filing the petition. The Court required that Debtor make certain financial disclosures to the Trustee, and adjourned the matter to March 17, 2020.

On March 10, 2020, the Trustee filed an Objection to the Motion to Dismiss Case [dkt item 16].

On March 17, 2020, the Court considered the Motion to Extend and the Motion to Dismiss. From the bench, the Court ordered that this Case would be dismissed if Debtor demonstrated that he was paying all of his disclosed unsecured creditors, whom Debtor represented held less than $20,000 in claims, and subject to Debtor paying reasonable compensation to the Trustee and his counsel. The matter was adjourned to April 16, 2020, to allow Debtor an opportunity to comply with the bench directives.

On March 27, 2020, Debtor filed his schedules of assets and liabilities, statement of financial affairs and other disclosure documents [dkt items 22 & 24]. He also filed a Letter [dkt item 25], in which he set forth the debts he owes to unsecured creditors and the pay-off amounts he has negotiated with each creditor, for a total of $10,229.54 in settlements.

Also on March 27, 2020, Counsel filed its Application [dkt item 21]. Counsel's Application shows that four different partners charged between 2.48 to 6.7 hours each, at rates ranging from $475.00 to $525.00 per hour. For these services, Counsel seeks $8,996.55 in legal fees and $17.30 in expenses.

On March 30, 2020, the Trustee filed his Application [dkt item 26]. He seeks approval of commissions in the amount of $2,672.61 based on a deemed distribution of the amounts Debtor is paying to settle the unsecured claims against him, and a presumed distribution of the fees and expenses sought by Counsel.

The April 16, 2020 hearing was cancelled, and the Applications deemed submitted.

On April 22, 2020, Debtor, now represented by counsel, filed an Affidavit in Support of Dismissal [dkt item 31].

## II. ANALYSIS

### A. Counsel's Compensation Application

Under § 330, "the court may award . . . reasonable compensation for actual, necessary services rendered by the trustee . . . or attorney . . . ; and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).[4] In determining the amount of reasonable compensation:

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The § 330(a)(3) factors are not exclusive, and the court has wide discretion in determining the amount of reasonable compensation. *In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017)(citing *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM)*, 210 B.R. 19, 23 (2d Cir. BAP 1997)). In addition, "the court shall not allow compensation for . . . unnecessary duplication of services." 11 U.S.C. § 330(a)(4).

---

[4] Section 330(a) contains a "notice and a hearing" requirement. "Notice and a hearing" means notice as is appropriate in the particular circumstances and opportunity for a hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A). An act is authorized without an actual hearing if notice is given properly and if an actual hearing is not requested timely by a party in interest. 11 U.S.C. § 102(1)(B)(i). No party in interest here requested a hearing.

The Court has an obligation to examine the propriety of attorney's fees, regardless of whether an objection is raised. *In re Bennett*, No. 16-74588-AST, 2018 WL 878874, at *5 (Bankr. E.D.N.Y. Jan. 30, 2018)(citing *In re Thorn*, 192 B.R. 52, 55 (Bankr. N.D.N.Y. 1995)). An applicant has the burden of proof that its services were reasonable and necessary. *In re GSC Group, Inc., et al.,* 502 B.R. 673, 741 (Bankr. S.D.N.Y. 2013); *In the Matter of The Robert Plan Corp., et al.,* 2018 WL 1267870, at *12 (Bankr. E.D.N.Y. Mar. 1, 2018); *see also In re Bennett*, No. 16-74588-AST, 2018 WL 878874, at *5 ("The burden of proof on the issue of the reasonableness of the legal fees charged rests with Counsel." (internal citations omitted)).

The application of § 330(a)(3) is not a matter of mechanically counting up the factors, to determine reasonableness by a majority tally. The prevailing method for weighing § 330(a)(3) factors is the "lodestar" approach, *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 766 (Bankr. E.D.N.Y. 2005), under which a reasonable fee is determined by multiplying the reasonable billing rate by the reasonable number of hours expended, plus appropriate enhancements. *Wells v. Bowen,* 855 F.2d 37, 43 (2d Cir. 1988); *P.A. Novelly v. Palans* (*In re Apex Oil Co.),* 960 F.2d 728, 731 (8th Cir. 1992); *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed. 40 (1983)("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The lodestar approach here calls for primary focus on § 330(a)(3) factors (A) and (C). There is no question that the rates charged by Counsel are reasonable (factor (B)) and that Counsel is skilled in bankruptcy matters (factor (F)).

Factor (A) looks at the time spent on the services rendered—a critical lodestar component. A review of the time-entries on the billing statements shows an excessive amount of

time spent on certain services, no use of paralegals to drive down the hourly rates charged to the estate, and a large number of conferences among the attorneys at Counsel's firm. For example, experienced partners repeatedly billed time to "review docket" or "check docket"—on February 17, 2020, February 24, 2020, March 17, 2020, and March 25, 2020—although docket monitoring is a paralegal-type activity. In addition, some of the time-entries are clumped—that is, they record multiple activities by an attorney on a particular day, but do not break down how much time was given to any one of the recorded activities. This can be seen in certain time-entries for February 18, 2020, February 24, 2020, February 28, 2020, March 17, 2020, and March 25, 2020. Such clumping makes it impossible to ascertain how much time was spent on one activity versus another. Further, the amount of time spent on attending hearings was high. On February 26, 2020, 2.7 hours, at a cost of $1,282.50, was spent to "[p]repare for and attend hearing on motion to compel debtor." Similarly, on March 17, 2020, 2.1 hours, at a cost of $1,102.50, was spent telephonically attending a hearing—in addition to another .9 hours, at a cost of $472.50, being spent preparing for that hearing. Yet neither hearing was particularly long or complex; one did not even require counsel to appear at the courthouse.

Factor (C) looks at whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, the case. The Court again observes that some of the time-entries are simply vague, making it difficult to determine if such services were objectively necessary or beneficial. For example, the frequently used generic description "review," whether of the docket or a motion, provides little explanation as why repeated reviews of the same material were necessary or beneficial. Other time-entries affirmatively show the rendering of services that were not necessary or beneficial. For example, three highly skilled and experienced partners each billed time to "review motion to dismiss"—

6

two partners on February 19, 2020, and another on February 24, 2020—an unnecessary amount of time to respond to a pro se letter motion. And one of those partners billed for reviewing the same motion again on February 25, 2020. Similarly, on March 17, 2020, two partners each billed .2 hours for checking the docket sheet, a duplicated endeavor that should have been done by a paralegal at a lower rate. Another example of work that cannot be characterized as necessary or beneficial is the .6 hours, at a cost of $315.00, spent on March 25, 2020, on "analysis of petition and docket" and work related to the § 521 motion. By that date, the § 521 motion had already been adjudicated.[5] Any services that constituted unnecessary duplication also cannot be allowed under § 330(a)(4).

This case was not so complex that four partners needed to work on it. Each partner who worked on this case was adequately skilled to handle it on his own, and, when each entry is considered cumulatively, it is clear that more time was spent than necessary.

Having reviewed the time entries thoroughly, the Court exercises its discretion to determine a reasonable compensation by taking into account the facts of this case and the Court's own knowledge of what constitutes objectively reasonable fees and services.

As noted, four partners worked on this case at an average hourly rate among them of $505.00. This is a reasonable hourly rate for a lawyer with comparable skill, experience, and bankruptcy expertise; each of these partners possesses the expertise and experience to have handled this case. Therefore, the Court adopts $505.00 as the reasonable hourly rate for its lodestar calculation. Next, the Court observes that the four partners worked a combined 17.88 hours. Because this case could have been adequately and competently staffed by any of these

---

[5] The date of this billing entry may have been the result of a recording error. But it is the applicant's burden to provide correct and credible supporting documents.

four partners, and given the duplications of services, the Court finds that 17.88 hours is unreasonable, in light of the generally straightforward nature of the Case, its lack of complexity, and its short duration, combined with the high level of sophistication and experience of these attorneys. In addition, this number of hours is not supported by the record, which demonstrates duplication of services, unnecessary time-investments in simple tasks, and vague descriptions for some time-entries. Again, the lack of use of paralegals drives up the cost per hour of work.

The Court determines that a reasonable amount of time spent on services at partner rates would have been 7.0 hours of time. Applying the lodestar approach, this would make reasonable compensation to be in the amount of $3,535.00 (the product of $505.00 an hour by 7.0 hours).

The Court does not question the nominal out of pocket expenses.

Accordingly, the Court determines that it is proper to award compensation to Counsel is the amount of $3,552.30, consisting of $3,535.00 in reasonable compensation for actual, necessary services, and $17.30 in reimbursements for actual, necessary expenses.

### B. The Application for Trustee Compensation

Section 330(a)(7) provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." Section 326, in turn, provides that:

> [i]n a case under chapter 7 . . . the court may allow reasonable compensation under section 330 . . . for the trustee's services . . . not to exceed 25 percent on the first $5,000 or less, [and] 10 percent on any amount in excess of $5,000 but not in excess of $50,00 . . . upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

8

11 U.S.C. § 326(a). The Trustee posits that, under § 326(a), he is "entitled to"[6] a commission-based compensation award in the amount of $2,672.61. To arrive at this amount, the Trustee first calculates "all moneys disbursed" to be $19,226.09—the sum of $10,229.54 (the amount Debtor is paying directly to his unsecured creditors) and $8,996.55 (Counsel's requested compensation). The Trustee then calculates his commission to be $2,672.61—the sum of (i) $1,250.00 (25% of the first $5,000.00) and (ii) $1,422.61 (10% of the remaining $14,226.09).

The Trustee's calculation of reasonable compensation fails for two reasons. First, as set forth in Part II.A, the Court is approving compensation to Counsel in the amount of $3,552.30, not $8,996.55. Second, the Court rejects the contention that "all moneys disbursed" includes the $10,229.54 in payments to be made by Debtor to his unsecured creditors. The Trustee is not disbursing these payments; as such, they are not properly included in the calculation of his commission on "all moneys disbursed."[7]

The Court finds no basis to depart from the maximum commission percentages allowable under Section 326. Accordingly, the Court determines the proper award to the Trustee for reasonable compensation under § 326(a) is $888.08 (25% of $3,552.30).

### III.  CONCLUSION

Consistent with the findings and conclusions made herein, it is hereby

---

[6] The Court rejects the Trustee's contention that § 326(a) "entitles him" to a commission in the maximum percentage allowed under the statute. The plain language of the statute is clear that the Court "may" award up to the given percentages; that is, the Court has discretion up to the statutory percentage maximums. The Court will exercise its discretion in awarding the Trustee the maximum percentage statutorily allowed, but applied to the correctly calculated amount of "all moneys disbursed."

[7] The Court declines to treat the payments Debtor is making directly as funds constructively disbursed by the Trustee, and the Trustee does not assert that they should be so characterized.

**ORDERED,** that the Counsel's Compensation Application be **APPROVED IN PART** such that Pryor & Mandelup, L.L.P. be allowed compensation in the amount of $3,552.30; and it is further

**ORDERED,** that the Trustee's Compensation Application be **APPROVED IN PART** such the Trustee be allowed compensation in the amount of $888.08, and it is further

**ORDERED** that Debtor pay the Trustee a total amount of $4,440.38 within fourteen (14) days of entry of this Order and file with this Court proof of payment; and it is further

**ORDERED** that, upon Debtor filing proof of payment to the Trustee, the Case shall be dismissed; and it is further

**ORDERED** that all other requests for relief in the Applications be **DENIED**.



**Dated: May 19, 2020**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**